WILLIAM GRAHAM AND JAMES AITKIN, APPELLANTS, *v.* THE FIRST NATIONAL BANK OF NORFOLK AND ORSON ADAMS, ITS RECEIVER, RESPONDENTS.

*Payment of dividends on bank stock is governed by the law of the place where they are declared, and not by the law of the stockholder's domicile — Right of a husband to receive the dividends on his wife's stock — by what law determined.*

The right of a husband to receive, and of a bank to pay to him, dividends declared upon shares of its stock owned by and standing in the name of his wife, must be determined by the law of the country in which the bank is located and the dividends are declared, and not by that of the country in which the husband and wife are domiciled.

APPEAL from a judgment in favor of the defendants, entered upon the report of a referee.

The action was brought to recover dividends declared by the defendant's bank upon certain shares of its stock to which the plaintiffs claimed to be entitled. The action was brought against the bank and was continued against its receiver.

The referee found among other things :

"That at the organization of said bank, and prior to January, 1865, one James Graham subscribed for and paid for (whether by and out of the funds of Mrs. Eliza A. Graham, his wife, does not appear) 196 shares of the capital stock of said bank, and

directed the certificate thereof to be issued in the name of Mrs. Eliza A. Graham, his wife.

" That it does not appear whether said certificate and shares were ever delivered to said Eliza A. Graham, or used by or for the benefit of or controlled by her ; but I find that after their issue said certificate and shares were used, according to the direction of said James Graham, as security for divers loans made to him, said James Graham, by various parties.

" That on or about June 8, 1865, the certificate of said shares was, by the direction of said James Graham, delivered to the plaintiffs as security for a loan then and there made by them to said James Graham ; but said shares were never transferred to the plaintiffs on the books of said bank, nor does it appear that said bank ever had any notice of such pledging or delivery of said stock to the plaintiffs, nor does it appear that said certificate was ever assigned in writing to the plaintiffs, or that the power of attorney and assignment printed on the back (which was in the usual form) was ever signed or executed by said Eliza A. Graham, or by said James Graham.

" That the plaintiffs held (as aforesaid) said certificate and stock from June 8, 1865, until on or about September 5, 1866, at which last named date it was delivered to said bank, and became its property upon said bank paying $20,000 to take up the loan for which the plaintiffs held possession of it.

" That while the plaintiffs held said certificate, as above mentioned, said bank declared three dividends, as follows : On or about January 1, 1866, a dividend of ten per cent ; on or about April 1, 1866, a dividend of thirty per cent ; on or about July 1, 1866, a dividend of five per cent ; the aggregate of said three dividends being the sum of $8,820.

" That said bank paid said thirty per cent in cash to James Graham, the husband of said Eliza A. Graham, who received the same on or about the 18th day of June, 1866 ; that said dividend of ten per cent and said dividend of five per cent were, by the direction, authority and approval of said James Graham, credited, on or about the dates of their declaration, to an account of ' James Graham, cashier,' and went to reduce and pay an indebtedness which said James Graham, either individually or as

cashier of the Farmers and Merchants' Bank of Elkton, Maryland, or the Elkton National Bank, owed said First National Bank of Norfolk, Virginia.

" That James Graham departed from his home and disappeared on September 10, 1866, and has not since communicated with wife or family or been heard from, and that there is no evidence, beyond the bare fact of his disappearance, showing or tending to show that said James Graham died at any period within the period of seven years from September 10, 1866.

" That on September 24, 1866, said Eliza A. Graham, at the request of the plaintiffs, and without any consideration being paid to her, and without the joining by, or the concurrence of, or the knowledge or approval of her husband, James Graham, executed and delivered to the plaintiffs an intrument in writing assigning to them all claims she had against the bank."

The opinion of the referee, Henry Nicoll, Esq., after reviewing the evidence, proceeds :

And this brings me to the important question of law, whether the Norfolk Bank is to be protected in making these payments. In other words, whether the law of Virginia — the place where the transaction took place — or the law of Maryland, the domicile of Mr. and Mrs. Graham at the time, is to prevail.

It has been fully proved before me, and it is in fact conceded, that at the times when these dividends were declared and credited, as already stated, the common law prevailed in Virginia in respect to marital rights, and that Mr. Graham being by that law entitled to reduce these dividends into possession, his rights in the matter are to be determined by *it*, and not by the law of Maryland. It is also conceded that, by the law of Maryland, these dividends were the separate property of Mrs. Graham, and were not subject to be reduced into possession by her husband.

Whatever difference may have heretofore existed among our own and British writers on international law, as to what law shall govern in the disposition of personal property *inter vivos* as distinguished from cases of intestacy and succession, the better opinion would now seem to be that the *lex loci contractus aut actus* is to govern in determining the validity of contracts or

transactions.   It is true that the continental jurists still adhere to the rigid rule, which has generally been laid down by them, that personal property is always governed by the law of domicile, but the exigencies of business growing out of the increasing international relations of mankind have brought our own jurists to see the necessity of adopting a more liberal rule.

In the early case of *Thompson* v. *Ketcham* (8 Johns., 189) a plea of infancy was interposed as a defence to a note made in the Island of Jamaica, but there was no proof as to the age at which minority ceased by the laws of that island.   From the opinion of the court, it is very clear that if it had been proved that, by the laws of Jamaica, the defendant was disabled by his non-age from making a valid contract, the defence would have been admitted.   There are numerous cases in our books in which it has been held that the *lex loci contractus* must govern in the interpretation of contracts, and there are also several in which the law of domicile has been held to prevail in cases involving the marital rights of husband and wife *inter sese.*   In cases of succession or intestacy the law of the domicile has been recognized and enforced, but there is no case that I am aware of in which the particular question now before me, as to which law shall prevail *inter vivos,* has ever been passed upon by our courts.   The current of authority, however, both in England and in the other States of the Union is in favor of holding that the law of the place where the transaction is consummated must prevail.   The recent case of *Milliken* v. *Pratt,* in the Supreme Court of Massachusetts, not yet reported (see Albany Law Journal, April 19, 1879, p. 311), is a direct authority in support of this proposition.   A married woman, domiciled with her husband in the State of Massachusetts, sent to the plaintiff, in the State of Maine, to induce him to sell her husband merchandise, her guaranty for the payment of his purchases.   The guaranty was sued upon in Massachusetts.   By the then existing laws of that State a married woman could not make such a contract, but the Supreme Court of Massachusetts held that inasmuch as the contract was to be performed in Maine, where no disability existed on the part of a married woman to make contracts, the law of that State must govern, and the contract was therefore held to be a valid one, binding upon the wife.

In delivering the opinion in that case, Chief Justice GRAY remarks as follows : " In the great majority of cases, especially in this country, where it is so common to travel or to transact business through agents, or to correspond by letter from one State to another, it is more just, as well as more convenient, to have regard to the law of the place of the contract as a uniform rule operating upon all contracts of the same kind, and which the contracting parties may be presumed to have in contemplation when making their contracts, than to require them at their peril to know the domicile of those with whom they deal, and to ascertain the law of that domicile, however remote, which in many cases could not be done without such delay as would greatly cripple the power of contracting abroad at all."

It is only by comity that laws can be said to have any extra territorial effect. They do not operate *proprio vigore* in other States or countries, and are never enforced or recognized when in doing so the State's own citizens or subjects would be prejudiced.

A forcible illustration of the extent to which this doctrine has been carried is presented in the case of *Guillander* v. *Howell* (35 N. Y., 657). In this case a party domiciled in the State of New York made an assignment of personal property situated in the State of New Jersey. The assignment was valid by the laws of this State, but was void as against creditors under the laws of New Jersey ; the Court of Appeals held the law could have no operation in the latter State, and that it was void as against attaching creditors in New Jersey.

All the reasons which support the doctrine of these latter cases apply with equal if not greater force to the one before me. The liability of the Norfolk Bank was one of contract ; they had agreed to pay in Virginia the dividends which had been declared on the stock standing in Mrs. Graham's name on their books ; they were not bound to take notice of the law of Maryland ; in fact, they had the right to presume that the common law prevailed in Maryland as it did in Virginia. (*Abell* v. *Douglass*, 4 Denio, 305.)

If, after having made these payments to Mr. Graham, an action had been brought for their recovery by his wife in the

courts of Virginia, the defendants would have been protected, and if Mrs. Graham or persons claiming under her could not have recovered these dividends in Virginia, the courts of this State would, in my judgment, equally refuse to afford relief. The fact that a different rule prevails in regard to the succession of and distribution of personal property in case of death is not inconsistent with the general principles which govern transactions *inter vivos.* The reasons for this distinction are forcibly stated by a very recent writer on the Conflict of Laws (see Wharton on Conflict of Laws, § 343), and they are to my mind satisfactory and conclusive.

Upon the whole, I must hold that the dividends in question were paid by the defendants' bank to Mr. Graham, and that he had the legal right to receive them under the laws of Virginia where the transaction took place.

These views of the case renders it unnecessary for me to pass upon the other questions which would have required examination, had I held otherwise on those which I have briefly discussed.

There must be judgment dismissing the complaint, with costs."

*Malcolm Campbell,* for the appellants. The assignment of claim by Mrs. Graham to the plaintiffs was a perfectly valid transfer. (*Barton* v. *Barton,* 32 Md., 214; *Whitridge* v. *Barry,* 42 id., 140; *Trader* v. *Lowe,* 45 id., 1; see also *Bany* v. *Equit. Life Ass. Soc'y,* 59 N. Y., 587; *Stoneman* v. *Erie R. R. Co.,* 52 id., 429.) The law of Virginia is not applicable to the case ; but the law of Maryland, the domicile of James Graham and his wife, is the law properly applicable thereto, and under that law the payment to the husband was not binding on the wife. (Wharton on Conflict of Laws, §§ 118–121, 331*a* ; *Le Breton* v. *Miles,* 8 Paige, 261; *Parsons* v. *Lyman,* 20 N. Y., 112; *Hoyt* v. *Commissioner of Taxes,* 23 id., 224; *Bonati* v. *Welsch,* 24 id., 157; *Hill* v. *Pine River Bank,* 45 N. H., 300; *Petersen* v. *Chemical Bank,* 32 N. Y., 21; *Lee* v. *Selleck,* 33 id., 615; *Guillander* v. *Howell,* 35 id., 657; *Loney* v. *Penniman,* 43 Md., 130; *Slaybacker* v. *Bank of Gettysburg,* 10 Pa., 373.) But the law of Virginia cannot be invoked to aid the defendants, unless there is clear

proof of actual payment of the dividends or an actual reduction to possession by the husband of the dividends themselves. Even the exercise of control by him over the stock does not amount to a reduction to possession of the dividends, and such reduction must be actual, not constructive. (*Harcum* v. *Hadnall*, *Ex'r*, 14 Grattan, 382, 383; *Searing* v. *Searing*, 9 Paige, 283.)

*Francis C. Barlow*, for the respondents.

BARRETT, J. :

We have gone over this case carefully and, upon the whole, are satisfied with the conclusions of the referee. It will not be necessary to give our reasons *in extenso*, as the referee's opinion is quite full and covers all the ground. The only point upon which we entertained any doubt was as to the fact of payment ; but, after reviewing the testimony we think there was enough to sustain the finding. As to the legal conclusion, the referee, in our judgment, was entirely right.

The *lex loci contractus aut actus* should govern in the payment of corporate dividends. Any other rule would be inconvenient and almost intolerable. The declaration of the dividend imports a contract. Thereby the corporation *agrees* to pay the specified amount to the shareholders registered upon its books. *Assumpsit* would lie therefor. The place of such contract is that of the corporate action. The place of *the act* of payment, which is that designated by the corporation, must also be considered. The company should not be required to look beyond the law of the place where such dividend contract is made and such act of payment is performed.

There can be no good reason why the rule in intestacy and succession should apply to such transactions *inter vivos*. There is no true analogy between the cases, and every consideration of public policy and business interest is opposed to the application of the *lex domicilii* to such payments.

It would be an exceedingly dangerous policy to require every corporation to look to the *lex domicilii* of each of its shareholders, under penalty of possibly being called upon to pay the dividend over again.

PEOPLE ex rel. SIEBERT v. POLICE COM'RS.    333

First Department, March Term, 1880.

There being nothing in the objections to the admission and rejection of evidence, and the rulings throughout being substantially correct, the judgment should be affirmed, with costs.

Davis, P. J., and Brady, J., concurred.

Judgment affirmed.